**UNITED STATES COURT OF INTERNATIONAL TRADE**
**NEW YORK, NEW YORK**

**BEFORE: UNASSIGNED**

| | | |
|---|---|---|
| **ARIZONA TILE, LLC,**<br>**M S INTERNATIONAL, INC.,**<br>**AND PNS CLEARANCE LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | ) | **Case No. 23-00019** |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs Arizona Tile, LLC ("Arizona Tile"), M S International, Inc. ("MSI"), and PNS Clearance LLC ("PNS") (collectively, "Plaintiffs") bring this Complaint against the United States of America, by and through undersigned counsel, and allege and state as follows:

## PARTIES

1. Plaintiffs Arizona Tile, MSI, and PNS are American companies that import and distribute quartz surface products ("QSPs") from India, among other products. Arizona Tile is headquartered in Tempe, Arizona, and both MSI and PNS are headquartered in Orange, California.

2. Defendant United States of America is the Federal Government of the United States of America.

## DETERMINATION TO BE REVIEWED

3. Plaintiffs contest certain aspects of the final results issued by the U.S. Department of Commerce, International Trade Administration ("Commerce"), in its first administrative review of the antidumping duty ("AD") order on certain QSPs from India, Case No. A-533-889. The period of review ("POR") was December 13, 2019 through May 31, 2021. The AD Order was published as *Certain Quartz Surface Products from India and Turkey: Antidumping Duty Orders*, 85 Fed. Reg. 37,422 (Dep't Commerce June 22, 2020) ("*AD Order*"). The AD final results were published as *Certain Quartz Surface Products From India: Final Results of Antidumping Duty Administrative Review; 2019–2021*, 88 Fed. Reg. 1,188 (Dep't Commerce Jan. 9, 2023) ("*Final Results*"). This appeal also contests certain aspects of Commerce's accompanying Issues and Decision Memorandum for the *Final Results*, dated December 30, 2022 ("*Final IDM*"), and the Memorandum on the Allegation of Ministerial Error, dated January 24, 2023 ("*Ministerial Error Memo*").

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers exclusive jurisdiction on the U.S. Court of International Trade to review final AD determinations issued by Commerce under Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930 (the "Act"), *as amended*, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (B)(iii).

## STANDING OF PLAINTIFFS

5. Arizona Tile, MSI, and PNS are, among their various business activities, U.S. importers of certain QSPs from India and are thus interested parties within the meaning of 19 U.S.C. § 1677(9)(A) and as defined in 19 C.F.R. § 351.102(b)(29)(i) and (ii). Therefore, Plaintiffs have standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

6. Commerce published the *Final Results* in the *Federal Register* on January 9, 2023. On January 31, 2023, Plaintiffs filed a Summons with this Court, timely commencing this action within thirty (30) days after *Federal Register* publication of the contested *Final Results*. Therefore, this action is timely brought in accordance with Section 516A(a)(2)(A)(i) of the Act, and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## STANDARD OF REVIEW

7. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

8. On June 22, 2020, Commerce published the *AD Order*. The *AD Order* established AD deposit rates as follows: (a) 3.58% *ad valorem* on imports of subject merchandise from Antique Marbonite Pvt. Ltd. ("Antique Marbonite"), along with its affiliates Shivam Enterprises ("Shivam"), RMC Readymix Porselano (India) Limited ("RRPIL"), and Prism Johnson Limited ("Prism Johnson") (collectively, "Antique"); (b) 0.33% *ad valorem* on imports of subject merchandise from Pokarna Engineered Stone Limited ("Pokarna"); and (c) 1.02% *ad valorem* on imports of subject merchandise from "All-Others" subject to the Order. *Id.*

9. On June 1, 2021, Commerce published an opportunity for interested parties to seek administrative review of the *AD* order. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 86 Fed. Reg. 29,240 (Dep't Commerce June 1, 2021). Following requests from interested parties, including Arizona Tile and MSI, Commerce initiated the first administrative review of imports of QSP from India

during the POR. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821, 41,823 (Dep't Commerce Aug. 3, 2021). On September 28, 2021, Commerce selected Antique and Pokarna as mandatory respondents in the first administrative review. *Respondent Selection Memorandum* (Dep't Commerce Sept. 28, 2021).

10. Antique timely filed its response to Section A of the Department's Initial Questionnaire on November 3, 2021, and timely submitted its responses to Sections B, C, and D on December 9, 2021. *Antique Group's "Submission of Section-A Initial Questionnaire Response"* (Nov. 3, 2021); *Antique Group's "Submission of Section-B Initial Questionnaire Response"* (Dec. 9, 2021); *Antique Group's "Submission of Section-C Initial Questionnaire Response"* (Dec. 9, 2021); *Antique Group's "Submission of Section-D Initial Questionnaire Response"* (Dec. 9, 2021). Additionally, on April 15, 2022, Antique timely filed its response to the Department's First Supplemental Questionnaire. *Antique Group's "Certain Quartz surface products from India (A-533-889 AR1 Submission of response to First Supplemental Questionnaire (Section A and B)"* (April 15, 2022).

11. On April 20, 2022, Commerce issued a Second Supplemental Questionnaire to Antique, originally setting a deadline of May 4, 2022 for Antique to submit its response. *Administrative Review of the Antidumping Duty Order on Certain Quartz Surface Products from India - Second Supplemental Questionnaire* (Dep't Commerce Apr. 20, 2022). On April 30, 2022, Antique requested a two-week extension of this deadline. *Antique Group's "Extension request to submit response to Second Supplemental Questionnaire (Section A, C and D)"* (Apr. 30, 2022). On May 2, 2022, Commerce granted a partial extension to Antique, extending the deadline by one week to May 11, 2022. *Certain Quartz Surface Products from India: First Extension of Time for Antique Group's Second Supplemental Questionnaire Response* (Dep't Commerce May 2, 2022).

12. On May 7, 2022, Antique requested a further one-week extension to file its Second Supplemental Questionnaire. *Antique Group's "2nd extension request to submit response to Second Supplemental Questionnaire (Section A, C and D)"* (May 7, 2022). On May 9, 2022, Commerce granted Antique's request, in part, providing an extension of five (5) days until May 16, 2022. *Certain Quartz Surface Products from India: First Extension of Time for Antique Group's Second Supplemental Questionnaire Response* (Dep't Commerce May 9, 2022). In issuing this second extension to Antique, Commerce departed from its usual practice of accepting submissions as long as they are filed before 5:00 PM Eastern Time ("ET") – as set forth in its own regulations at 19 C.F.R. § 351.303(b) – and, instead, set a deadline of 10:00 AM ET, a deadline Commerce itself admits is "not utilized regularly." *Final IDM* at 17.

13. On May 16, 2022, Antique filed its second supplemental response between 2:56 PM and 3:45 PM ET. *Rejection of Second Supplemental Questionnaire Response* (Dep't Commerce May 18, 2022) (*"Commerce's First Rejection Letter")*. Antique filed at this time because of its lack of familiarity with deadlines outside of Commerce's standard 5:00 PM deadline set forth in 19 C.F.R. § 351.303(b) and due to COVID-19-related challenges. *"Submission of Antique Group's Amended Case Brief" (Aug. 24, 2022).*

14. On May 18, 2022 Commerce rejected Antique's submission on the basis of the untimely filing and proceeded to remove the submission from the record of review. *Commerce's First Rejection Letter*.

15. On May 19, 2022, Antique submitted its first request for an opportunity to refile its second supplemental response. *Antique Group's "Request for Opportunity to Refile Response to Second Supplemental Questionnaire (Section A, C and D)"* (May 19, 2022). On May 20,

Commerce rejected Antique's request. *Rejection of Second Supplemental Questionnaire Response* (Dep't Commerce May 20, 2022).

16. On May 24, 2022, Antique submitted its second request for Commerce to accept its second supplemental response. *Antique Group's "Request for acceptance of 2nd Supplemental Questionnaire Response (Sec-ACD) post deadline"* (May 24, 2022). Again, Commerce rejected Antique's request. *Denial of Second Request to Resubmit Second Supplemental Questionnaire Response* (Dep't Commerce June 3, 2022).

17. Antique also requested and participated in an *ex parte* telephone conference with Commerce regarding the same issues on June 1, 2022. *Certain Quartz Surface Products from India: Ex-Parte Meeting* (Dep't Commerce June 1, 2022).

18. On June 10, 2022, Antique submitted its third and final request for the Department to reconsider its rejection of the supplemental response and to allow Antique to file out of time. *Antique Group's "Request For Reconsideration and Request for Extension to File Out of Time"* (June 10, 2022). Commerce did not respond to Antique's third and final request for reconsideration.

19. On July 1, 2022, Commerce issued its preliminary results, subsequently published in the *Federal Register* on July 8, 2022. Commerce preliminarily assigned a 323.12% dumping margin for Antique on the basis of total adverse facts available ("AFA"). *Certain Quartz Surface Products From India: Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission of Antidumping Duty Administrative Review; 2019-2021*, 87 Fed. Reg. 40,786 (Dep't Commerce July 8, 2022) ("*Preliminary Results")*. At the same time, Commerce preliminarily assigned a dumping margin of zero to Pokarna, and a dumping margin of 161.56%

for All Other companies based on a simple average between the rates assigned to the mandatory respondents. *Id.*

20. Plaintiffs filed a case brief on August 17, 2022, urging Commerce to (1) accept Antique's second supplemental questionnaire response as warranted by the extraordinary circumstances it faced; (2) (in the alternative) apply a rate that is reasonably reflective of the Antique's export behavior, should the Department continue to apply AFA; and (3) (in the alternative) establish the "All-Others" rate in the *Final Results* by "pulling-forward" the All-Others rate calculated in the original investigation.

21. On January 3, 2023, Commerce issued its *Final Results*, subsequently published in the *Federal Register* on January 9, 2023. Commerce made no changes to its *Preliminary Results* with respect to Antique's assigned rate. Commerce rejected each of Antique's arguments and continued to assign a final dumping margin of 323.12% to Antique on the basis of total "adverse facts available." *Final Results*.

22. Commerce stated in its *Final Results* its intention to issue instructions to U.S. Customs and Border Protection ("CBP") to assess this rate on imports covered by the review, and to direct CBP to begin collection of cash deposits of estimated antidumping duties on imports from Antique at the rate of 323.12%, effective with merchandise entered on or after the date of publication in the *Federal Register*. *Final Results.*

23. In its *Final Results*, as in its *Preliminary Results*, Commerce assigned a dumping rate of zero to Pokarna, the only other mandatory respondent in the review. By contrast, Commerce lowered the All-Others rate from the 151.56% rate originally assigned, opting instead to "pull forward" the 3.19% All-Others rate calculated in the original investigation. *Final Results*; *Final IDM* at Cmt 5.

24. However, in electing to "pull forward" the All-Others rate calculated in the underlying investigation, Commerce did not apply the appropriate export subsidy offset that is required by statute. 19 U.S.C. § 1677a(c). On January 9, 2023, Plaintiffs filed Ministerial Error Comments to notify Commerce of this omission. "*Quartz Surface Products from India: Ministerial Error Comments on Final Results and Comments on Draft Customs Instructions of Arizona Tile, LLC; M S International, Inc.; and PNS Clearance LLC*" (Jan. 9 , 2023). On January 24, 2023, Commerce issued a memorandum declining to take the export subsidy adjustment into account. *Antidumping Duty Administrative Review of Certain Quartz Surface Products from India: Allegation of Ministerial Error* (Dep't Commerce Jan. 24, 2023).

**STATEMENT OF CLAIMS**

**COUNT ONE**

25. Paragraphs 1-24 are adopted and incorporated herein by reference.

26. Under 19 C.F.R. §351.302(c)(2), Commerce may consider an untimely filed extension request when a party demonstrates that an extraordinary circumstance exists. Commerce should have accepted Antique's second supplemental questionnaire response because extraordinary circumstances existed that warranted a retroactive extension of the deadline. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). Commerce's rejection of Antique's second supplemental questionnaire is not supported by substantial evidence, and is otherwise contrary to law.

**COUNT TWO**

27. Paragraphs 1-26 are adopted and incorporated herein by reference.

28. Commerce has adopted a practice of exercising "second chance" discretion, through which firms are afforded one second chance to refile a late submission. Commerce has noted that it has exercised this type of discretion in situations where "a party intended to meet the deadline and promptly notified Commerce to request an extension when it realized that it has not done so." *Large Residential Washers from Mexico*, 83 Fed. Reg. 11,963, (Dep't Commerce March 19, 2018) (Notice of Final Results of Antidumping Duty Administrative Review; 2016-2017), Issues and Decision Memorandum (March 12, 2018) at 16. Commerce also discussed in *Large Residential Washers from Mexico* that it is, in its own words, an agency "practice" to make the above-mentioned second chance opportunity available. *Large Residential Washers from Mexico*, 82 Fed. Reg. 1,810, (Dep't Commerce Nov. 8, 2017) (Notice of Preliminary Results of the Antidumping Duty Administrative Review; 2016-2017), Issues and Decision Memorandum (Oct. 31, 2017) at Application of Facts Available and Adverse Inferences. Antique has met the standard laid out by Commerce since it clearly intended to meet the deadline and actually filed well before the typical 5:00 PM ET deadline set forth in Commerce's regulations. Further, Antique had not previously been extended this "second chance" opportunity. The specific facts of this case call for the exercise of the Department's "second chance" practice, whereby Antique would be permitted its one opportunity to refile a late submission. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1). Commerce's refusal to extend its second chance discretion to Antique, a decision not addressed in the Final Results, is not supported by substantial evidence, and is otherwise contrary to law.

**COUNT THREE**

29. Paragraphs 1-28 are adopted and incorporated herein by reference.

30. Commerce may only apply an AFA rate in certain prescribed circumstances that satisfy three criteria: (1) Commerce must identify a gap in the record; (2) Commerce must identify how the offending party failed to cooperate to the best of its ability to comply with a request for information; and (3) the overall AFA decision must be supported by substantial evidence. 19 U.S.C. § 1677e(b). Further, the CIT has made clear that the AFA statute "does not support the use of AFA on the basis of an *inadvertent failure to cooperate*." *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 195 F. Supp.3d 1334, 1350 (Ct. Int'l Trade 2016). Commerce should not have applied AFA to Antique because the record information does not support a finding that Antique failed to cooperate to the best of its ability with Commerce's requests for information in this proceeding. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1). Commerce's application of AFA to Antique is not supported by substantial evidence, and is otherwise contrary to law.

**COUNT FOUR**

31. Paragraphs 1-30 are adopted and incorporated herein by reference.

32. Even when Commerce exercises its discretion to apply adverse facts, the resulting rate must be consistent with the Department's underlying obligation to calculate fair and accurate dumping margins. *See, e.g. Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013). Notably, the Federal Circuit has affirmed that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, *not to impose punitive, aberrational, or uncorroborated margins*." *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (emphasis added). Further, under 19 U.S.C. § 1677e(c), the Department has a statutory obligation to "corroborate" any selected AFA rates

"from independent sources that are reasonably at {its} disposal." Thus, assuming, *arguendo,* that this Court finds that Commerce is entitled to continue to apply AFA to Antique, Commerce should be required to use other information available on the record to "fill the gaps" in order to calculate a margin that is fair, reasonable, and properly corroborated. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1). Commerce's application of an unfair, unreasonable, and improperly corroborated margin to Antique is not supported by substantial evidence, and is otherwise contrary to law.

**COUNT FIVE**

33. Paragraphs 1-32 are adopted and incorporated herein by reference.

34. Commerce has discretion to promulgate regulations to implement its authority to determine whether antidumping or countervailing duties shall be imposed in accordance with 19 U.S.C. § 1671 et. seq. Notwithstanding, Commerce may not impose inherently unreasonable and arbitrary standards on participants in the conduct of its proceedings. Commerce's employ of an "extraordinary circumstances" standard to accept or reject late-filed submissions in antidumping and countervailing duty proceedings, as prescribed by 19. C.F.R. § 351.302(c)(2), is both unreasonable and arbitrary. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1). Commerce's promulgation of its "extraordinary circumstances" standard is arbitrary and capricious, and its application in this case was an abuse of agency discretion, and thus not in accordance with law.

**COUNT SIX**

35. Paragraphs 1-34 are adopted and incorporated herein by reference.

36. Commerce has a statutory obligation to adjust cash deposit rates to take export subsidies into account. The Tariff Act of 1930, as amended, directs that "{t}he price used to establish export price and constructed export price ***shall*** be increased by . . . the amount of any countervailing duty imposed on the subject merchandise . . . to offset an export subsidy." 19 U.S.C. § 1677a(c) (emphasis added). The Federal Circuit has emphasized this obligation by highlighting that the statute's use of "shall" here is intentional and "generally creates 'an obligation impervious to judicial discretion.' " *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1328 (Fed. Cir. 2020) (citation omitted). Commerce's omission of the export subsidy offset from the All-Others' cash deposit and assessment rates constitutes a ministerial error because the All-Others rate from the original investigation was not properly copied and duplicated into the *Final Results* of this review. Commerce, thus, should have adjusted the Non-Selected Companies' cash deposit and assessment rates to account for export subsidy adjustments. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1). Commerce's omission of the export subsidy offset from the Non-Selected Companies' cash deposit and assessment rates is not supported by substantial evidence, and is otherwise thus contrary to law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) hold that the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law;

(b) remand the *Final Results* to Commerce with instructions to issue a new determination and take other actions, as appropriate, consistent with this Court's decision; and

(c) provide such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Jonathan T. Stoel

Jonathan T. Stoel
Jared R. Wessel
Nicholas R. Sparks
Cayla D. Ebert
Tyra J. Walker

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Arizona Tile, LLC, M S International, Inc., and PNS Clearance LLC*

Date: February 10, 2023